JAMES R. RHYNE, by his next friend J. Laban Rhyne, v.
WILLIAM H. RHYNE.

(Filed 8 December, 1909.)

1. **Contracts, Interpretation of — Intent — Reasonable Support — Blanks Supplied—Certainty.**

A bond in a certain sum given in consideration of certain lands, conditioned upon the obligor's supporting in a certain manner an imbecile son of the obligee for and during his natural life, if the son think it proper to live with him, and that if he "shall be minded to live with another person" the obligor shall pay the son yearly for and on account of his maintenance "at such other place the sum of......dollars per year," evidences the intent that the father desired to provide for the support and maintenance of the son; and the blank left therein does not avoid the undertaking if the son live with another person, but manifests a purpose not to limit the amount thought necessary for the son's support except as it is imposed by the condition of life in which he lived.

2. **Contracts, Interpretation of — Reasonable Support — Measure of Damages—Value of Services—Instructions—Harmless Error.**

In a suit upon a bond and undertaking given to another for the support of an imbecile son, if he think it proper to live with the obligor, and if not, by construction, a reasonable allowance to the son in keeping with his condition in life, it was shown that the son was an average field hand and worth about $65 a year. The son lived with another person than the obligor. *Held,* (1) it was error in the trial judge to instruct the jury that recovery could be had of the amount necessary to support the son in his condition of life for the period he had not lived with the obligor, as it allowed no deduction for the value of the son's services during that time; (2) it appeared from the verdict that the jury had made this deduction, and the error was harmless.

WALKER, J., dissenting.

APPEAL from *Councill, J.,* May Term, 1909, of GASTON.

Civil action, tried at May Term, 1909, of the Superior Court of GASTON County, his Honor, *Judge Councill,* presiding.

The action is brought on a bond executed by defendant, of which the following is a copy:

"STATE OF NORTH CAROLINA—Gaston County.

*"Know all men by these presents:* That I, William H. Rhyne, am held and firmly bound unto James R. Rhyne in the sum of one thousand dollars, good and lawful money of the United States, to the true and faithful payment whereof to him, the said James R. Rhyne, his heirs, executors and administrators, jointly and severally, firmly by these presents, signed with my hand and sealed with my seal, this the 11th day of May, 1886.

"The condition of the above obligation is such that, whereas the above bounden William H. Rhyne hath this day contracted

and agreed to maintain the said James R. Rhyne during his natural life. And the said William H. Rhyne, in consideration of six hundred dollars in hand paid by Jacob A. Rhyne, the receipt of which is hereby acknowledged, hath covenanted and agreed, and by these presents doth covenant and agree in manner and form following: That is to say, that he, the said William H. Rhyne, his heirs, executors and administrators, shall and will, at his and their own proper costs and charges, maintain and keep the said James R. Rhyne for and during his natural life, with good and sufficient meat, drink, apparel, washing and lodging, at his, the said William H. Rhyne's, dwelling house, if the said James R. Rhyne shall think proper to live with him, and if the said James R. Rhyne shall be minded to live with any other person, that then in such case he, the said William H. Rhyne, his executors and administrators, shall and will well and truly pay the said James R. Rhyne, yearly, for and on account of his maintenance at such other place, the sum of _____ dollars per year, and after that rate for any greater or lesser time than a year that the said James R. Rhyne shall be mindful as aforesaid to dwell with any other person than the said William H. Rhyne.

"In witness whereof, the said William H. Rhyne has hereunto set his hand and affixed his seal, on the date above written.

　　　　　　　　　(Signed)　WILLIAM H. RHYNE.　[Seal.]
"Witness: (Signed) JOHN LABAN RHYNE."

James R. Rhyne did not reside with the defendant, and brings this action to recover such sum as was reasonably necessary for his support while residing with J. Laban Rhyne.

These issues were submitted to the jury:

1. "Is the plaintiff's cause of action, or any part of it, barred by the statute of limitations?" Answer: "No."

3. "What sum is due to the plaintiff on account of the breach of the contract?" Answer: "$775."

The court rendered judgment for the plaintiff, and the defendant appealed.

*A. G. Mangum* for plaintiff.
*Burwell & Cansler* and *George W. Wilson* for defendant.

BROWN, J., after stating the case: The parties to this action were sons of Jacob A. Rhyne, who, being quite old, on 6 May, 1886, conveyed certain real property to his two sons, William H. Rhyne and John Laban Rhyne, for the purpose of providing a support for himself and his imbecile son, James R. Rhyne. The

tract conveyed to Laban was for the grantor's benefit. The tract conveyed to this defendant was then worth about six hundred dollars, and the consideration for the conveyance was the contract hereinbefore set out.

The plaintiff and his father resided with Laban, at the home place, and, after the father's death, the plaintiff continued to reside there, where he had lived all his life.

This action is brought to recover under the last clause of the contract, which reads as follows: "And if the said James R. Rhyne shall be minded to live with any other person, that then and in such case he, the said William H. Rhyne, his executors and administrators, shall and will well and truly pay the said James R. Rhyne, yearly, for and on account of his maintenance at such other place, the sum of _____ dollars per year, and after that rate for any greater or lesser time than a year that the said James R. Rhyne shall be minded as aforesaid to dwell with any other person than the said William H. Rhyne."

The right to recover depends upon whether, under a proper construction of the entire instrument, the defendant can be required to contribute to plaintiff's support while living with his brother, Laban; for it is admitted that if, under the conditions of the bond, with the blank space unfilled, the defendant can only be required to support plaintiff while he lived with defendant, then plaintiff cannot recover. The solution of the question depends upon the construction to be placed upon the bond itself, considered in the light of the circumstances surrounding the parties at the time it was executed.

His Honor charged the jury that "The execution of the contract having been admitted by the defendant, and that under its terms and provisions the plaintiff had a right to reside at any place he might desire, that the obligation rested upon the defendant to pay him such sum of money as would be reasonable and sufficient to support him in a manner equal to the one referred to in the contract, taking into consideration his station in society and his relation in life, and taking into consideration what was in contemplation by the parties at the time of the execution of the contract." To this charge defendant excepted.

We are of opinion that this interpretation of the instrument is correct. We do not think that the failure to fill up the blank space avoids the contract and renders it impossible for plaintiff to recover. On the contrary, we are of opinion that the failure to fill up the blank manifests a purpose not to limit the amount thought to be necessary for plaintiff's support when not living

RHYNE v. RHYNE.

with defendant, except by such limitation as is imposed by the condition of life in which plaintiff had lived.

To arrive at the intent of the parties it is proper to look at the entire instrument, the condition of the parties and the purpose for which it was entered into.

The father had made provision for himself, and at the same time he undertook to provide for his weak-minded son. The sole purpose which induced the father to convey the land to the defendant was to secure a support for plaintiff. It is hardly conceivable that he intended to place plaintiff in defendant's absolute power by forcing him to reside with him and leave the old home, where plaintiff had lived all his life. Why put in the clause that plaintiff might live elsewhere and then purposely cut him off from a support in case he exercised the very privilege conferred on him? Such construction is antagonistic to the words of the instrument and at variance with the manifest purposes of the parties to it.

We recognize the general rule that if a blank be left in an instrument the omission may be supplied only if the instrument contains the means of supplying it with certainty. But this instrument can be easily and fairly construed to be a completed contract without filling in the blank. The obligation is to pay one thousand dollars, and the contract, the performance of which the bond is intended to secure, is the maintenance of plaintiff; and the failure to fill in the blank appears to us to indicate a purpose to measure the cost, not with exactness, but by the reasonable needs of plaintiff from year to year, under the changing conditions of his life.

None of the authorities cited by the learned counsel for defendant appear to give us much light, for the cases cited relate to definite promises to pay, and are coupled with nothing else.

To illustrate: In the Illinois case (*Church, v. Noble,* 24 Ill., 291) the contract contained several independent provisions, which were enforcible, but also contained a clause as follows: "And shall, in addition, pay the said party of the second part (the plaintiff) the sum of _____."

Of course, this provision was held not to be enforcible, for where there is so great uncertainty that it cannot be known what is contracted for, the contract is necessarily void on that account.

The other assignments of error relied on in defendant's brief are predicated upon alleged error in his Honor's charge, wherein he instructed the jury that the plaintiff would be entitled to recover from the defendant such an amount as the jury should determine a reasonable charge for his annual support and main-

tenance, without deducting anything therefrom on account of the value of the labor which he rendered during said time. We think this charge erroneous, and would entitle defendant to a new trial but for the manifest fact that the jury, disregarding the charge or failing to understand it, cured the error of the judge by deducting from the cost of plaintiff's support the value of his labor.

The defendant offered no evidence, and that relating to the cost of supporting plaintiff, as well as to the value of his services, comes from plaintiff's witnesses.

The smallest estimate placed upon the cost of supporting plaintiff is one hundred dollars per year. The testimony as to the value of his labor is that a good field hand is worth sixty-five dollars per year; that plaintiff was forty-two years old when this contract was executed and is now sixty-five; that a part of the time he was an average field hand, although very feeble-minded and fit for nothing else; that for ten years past he has been physically feeble and not an average field hand and able to work but little. The jury gave $775 for a period of about twenty-two years, up to 25 March, 1908, when this action was commenced, or about thirty-five dollars per annum, which is the difference between the lowest estimated cost of supporting plaintiff and the highest estimate placed upon the value of his labor. It is also about six per cent. interest on the value of the land conveyed to defendant at the date he received it.

If the plaintiff is entitled to recover at all, then, in any view of the evidence, he is entitled to recover as much as the sum awarded by the jury.

Upon a review of the record, we find no error which, in our opinion, necessitates a new trial.

Judgment affirmed.

WALKER, J., dissenting.